IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

STEPHEN COREY JAMES, :
    Plaintiff :
     :
    vs. : CIVIL NO. 1:CV-09-1081
     :
SUTLIFF SATURN, INC. :
    Defendant :

*M E M O R A N D U M*

*I.    Introduction*

    Plaintiff, Stephen Corey James, filed this action against his former employer, Sutliff Saturn, Inc. ("Sutliff"), pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.*, the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 *et seq.*, alleging, amongst other things, racial and disability discrimination. Presently before the court is defendant's motion for summary judgment on all claims.

    We will examine the motion under the well-established standard. *Lawrence v. City of Philadelphia*, 527 F.3d 299, 310 (3d. Cir. 2008). Upon careful review of the briefs and the record, we will grant defendant's motion and enter judgment in favor of Sutliff and against James.

*II.    Background*

    James', an African-American, employment began with Sutliff on September 13, 1999. He was hired as an appearance technician for Sutliff's Carlisle Pike facility. Def.'s Statement of Material Facts ("SMF") ¶¶ 2-4. Sutliff disciplined Plaintiff on three

occasions while he worked at the Carlisle Pike facility. The first incident occurred because plaintiff used Sutliff materials to detail a friend's vehicle. Def.'s SMF ¶ 5. The second and third incidents involved James' failure to maintain the prep shop in a clean, presentable manner. Def.'s SMF ¶¶ 6-7, 10. As a result of these infractions, Sutliff transferred plaintiff to its Harrisburg, Pennsylvania facility.

Due to a minor problem with his right knee, on November 7, 2005, James underwent knee surgery to correct meniscus and cartilage damage. Def.'s SMF ¶ 12; *see also* doc. 28, Ex. A at pg. 20-21. As a result of this surgery, Sutliff granted plaintiff twelve weeks of Family Medical Leave Act ("FMLA") leave, which expired on February 1, 2006. Def.'s SMF ¶¶ 13-14. After expiration of James' FMLA leave, Sutliff granted plaintiff an additional leave of absence. Def.'s SMF ¶ 15; *see also* doc. 28, Ex. A at 72-73.

Prior to his leave, James was the only full-time appearance technician at Sutliff's Harrisburg facility. (doc. 28, Ex. A at 67.) As a result of his leave of absence, Sutliff promoted another employee to replace James while he was recuperating. (doc. 20, Ex. E.) However, James' replacement resigned on February 2, 2006. *Id.* Sutliff promoted another employee, James Sulzer, to fill the vacate appearance technician position until such time as James could return to work. *Id.* However, when plaintiff returned to work on March 7, 2006, Sutliff terminated his employment allegedly because Sulzer was performing well and there was not enough work to support two appearance technician positions. Def.'s SMF ¶¶ 21, 22, 24, 32-33.

James, as one of only a few African-Americans employed by Sutliff, believed he was terminated because of racial discrimination. As a result, he filed an administrative action with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC") alleging discrimination based

on race.  On September 6, 2010, plaintiff attempted to add a claim of disability discrimination to his PHRC and EEOC charges.  In March of 2009, plaintiff received a Right to Sue letter from the EEOC and PHRC.  Subsequently, he filed the pending action in this court.

*III.    Discussion*

*A.    Discrimination based on Race*

Title VII and PHRA race discrimination claims are examined under the familiar *McDonnell Douglas* burden-shifting analysis.  *Sarullo v. United States Postal Service*, 352 F.3d 789, 797 (3d Cir. 2003); *Jones v. School Dist. Of Philadelphia*, 198 F.3d 403, 410 (3d Cir. 1999)(PHRA).  Under this analysis, James "bears the initial burden of establishing a prima facie case by a preponderance of the evidence." *Sarullo*, 352 F.3d at 797 (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506, 113 S.Ct. 2742 (1993)).  If the plaintiff establishes a prima facie case, the burden then shifts to the employer to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Sarullo*, 352 F.3d at 797 (quoting *McDonnel Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817 (1973)).  If defendant carries its burden, the presumption of discriminatory action is rebutted, and the plaintiff must then establish by a preponderance of the evidence that the "employer's proffered reasons were merely a pretext for discrimination." *Sarullo*, 352 F.3d 797 (citing *Texas Dep't. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253-55, 101 S.Ct. 1089 (1981)).

The existence of a prima facie case is a question of law.  *Sarullo*, 352 F.3d at 797. James must demonstrate that: (1) he belongs to a protected class; (2) he was qualified for the position; (3) he was subject to an adverse employment action despite being qualified; and (4) this adverse action occurred under circumstances that raise an

3

inference of discrimination. *Id.* The "central focus...is always whether the employer is treating 'some people less favorably than others because of their race, color, religion, sex, or national origin." *Pivirotto v. Innovative Systems, Inc.*, 191 F.3d 344, 352 (3d Cir. 1999)(quoting *Int'l Bhd of Teamsters v. United States*, 431 U.S. 324, 335 n.15, 97 S.Ct. 1843 (1977)). "The prima facie test remains flexible and must be tailored to fit the specific context in which it is applied." *Sarullo*, 352 F.3d at 797-98. Nevertheless, although James need not establish a precise kind of disparate treatment to establish a discrimination claim, he must establish some causal nexus between his membership in a protected class and the decision to terminate his employment. *See Sarullo*, 352 F.3d at 798.[1]

        Contrary to Sutliff's assertion, we conclude that James has established a prima facie case of race discrimination. It is undisputed that James, an African-American male, belongs to a protected class. It is also beyond dispute that James' employment was terminated by Sutliff. Likewise, it is equally undisputed that James qualified for the appearance technician position by virtue of his having held the position prior to his knee surgery. The issue before us is whether plaintiff has submitted sufficient evidence showing his termination occurred under circumstances that raise an inference of discrimination. We conclude that his termination, and then replacement by Sulzer, a white male, is sufficient to raise the inference of discrimination. However, our inquiry does not end there. Sutliff now has the burden to articulate some legitimate, nondiscriminatory reason for James' termination.

---

[1] Defendant proposes that the fourth element for a prima facie case under Title VII requires a showing that other "similarly situated individuals outside of the plaintiff's protected class were treated more favorable." (Doc. 22 at 8.) This is not the law in this circuit. In *Pivirotto*, the Third Circuit rejected a requirement that a plaintiff must show that he was replaced by someone outside of the protected class. *Pivirotto*, 191 F.3d at 352; *Sarullo*, 352 F.3d at 798 n.7 (recognizing change in the standard). Current Third Circuit precedent requires only that the plaintiff offer evidence of any circumstances that would give rise to an inference of unlawful discrimination. *See Id.*

Sutliff asserts that when James returned from leave management determined that Sulzer should not be removed from the appearance technician position because he was reliably performing the job and had no disciplinary issues. (doc. 22 at 10.) Consequently, management concluded that there was not enough work for two technicians, and thus James was terminated. As we discussed previously, the evidence shows that James had a history of disciplinary infractions necessitating his transfer from Sutliff's Carlisle Pike Facility to Harrisburg. Based on this and other evidence, we conclude that Sutliff has sufficiently articulated a non-discriminatory reason for James' termination. The burden now rests with the plaintiff to establish by a preponderance of the evidence that the defendant's proffered reasons were merely pre-textual.

In support of its position that Sutliff's explanation is a pretext for discrimination, James relies principally on his own statements and the fact that one of disciplinary actions occurred while he was out on paternity leave. On February 27, 2004, defendant disciplined plaintiff because of the condition of the prep shop. James contends he was on paternity leave when this incident occurred. He also asserts that fellow, white employees who were actually present during the incident were not disciplined. Specifically, James stated:

> Q. Okay. So – well, did Mr. Sutliff ever treat you unfairly?
>
> A. I believe so, yes.
>
> Q. Okay. How did he treat you unfairly?
>
> A. He insisted that Mike Kauffman write me up when I came back from – I was off for a period of time for when my son was born.
>
> Q. Mm-Hmm.
>
> A. When I came back because I was the senior person in the building, he went down and inspected the shop and found that it wasn't in good condition; and I was wrote up because of that yet I had been off for the last week or so.

5

> Q. You were the highest ranking person in that shop?
>
> A. Yes.
>
> Q. And is that the reason that he wrote you up?
>
> A. Yes.
>
> Q. Are you saying it was unfair simply because you were off, or are you contending that he did that for an inappropriate – for another reason?
>
> A. Because I was off. I mean, I had no – I wasn't able to take care of that problem.

(doc. 28, Ex. A at 32-33.) James offers this as direct evidence of discrimination. However, this statement discounts plaintiff's assertion that the disciplinary action he suffered was direct evidence of discrimination. Rather, this testimony establishes that James was disciplined because he was the highest ranking person at the prep shop, not because of his race.

Likewise, plaintiff relies on his own impressions in support of his discrimination claim. James testified, in recounting the disciplinary incident of February 27, 2004:

> Q. Now, was there any process to grieve this, anything like that at this particularly company?
>
> A. Not that I'm aware of. I mean, the only thing I was able to do was write a statement in here. And, as you see, I disagreed with the violation; and I clearly marked that here because, first, I wasn't – I wasn't there. Secondly, the two employees that were here at the time did not get any warning. They received no reprimand, only I did; and they were both Caucasian. How do you fault me for something that happened when I wasn't there, and I get wrote up and something goes in my employee jacket because of it? I don't understand that.
> It seemed like this was the start of the beginning.
>
> Q. Start of the beginning of what?

> A. Just to get rid of me I guess. I don't know. It just seemed like something was different. That's all. Once I came back something was different.

(doc. 28, Ex. A 88-89.) These statements however are not direct evidence of racial discrimination, but are unsupported assertions that are inadequate to demonstrate pretext. *See Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989). In addition, as we have previously stated:

> This court does not sit as a member of a defendant's personnel staff and does not review the wisdom of a defendant's employment decision. Rather, our role is to determine whether a jury could conclude that the defendant lied about the true reasons for its decision or whether a jury could find that the defendant actually used an illegal factor in its decision.

*Elmore v. Clarion University of Pennsylvania*, 933 F.Supp. 1237, 1249 n.14. In this case, we simply cannot find that defendant based its decision to terminate James on an illegal factor. After a thorough review of the record, we conclude that plaintiff has failed to sufficiently show by a preponderance of the evidence that defendant's asserted explanation was a pretext for racial discrimination. We therefore conclude that no genuine issues of material fact exist, and thus a reasonable jury could not find in favor of the defendant.

### B. Discrimination based on Race

Defendant argues that James' ADA claim should be dismissed because plaintiff failed to verify the amendment to his PHRC complaint.[2] Plaintiff counters contending that the PHRC failed to properly process the amendment in accordance with

---

[2] We note that the PHRA and the ADA are "basically the same." Rinehimer v. Cemcolift, Inc., 292 F.3d 375, 382 (3d Cir. 2002) "'Pennsylvania courts . . . generally interpret the PHRA in accord with its federal counterparts.'" Id. (quoting Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996)); see also Williams v. Philadelphia Hous. Auth. Police Dep't, 380 F.3d 751, 761 n.6 (3d Cir. 2004)(the analysis of an ADA claim applies equally to a PHRA claim). Thus, our analysis of an ADA claim applies to a PHRA claim.

plaintiff's instructions. James principally relies on *Hicks v. ABT Assoc., Inc.,* 572 F.2d 960 (3d Cir. 1978) for the proposition that the PHRC's failure to correctly process his amendment should not be used against him. In *Hicks*, the Third Circuit held "[o]nce the charging party has done all that he can reasonably do to amend his charge *in accordance with the Commission's regulations*" the failure of an administrative agency to accept the amendment, due to its failure to adhere to the statute and regulations, does not penalize the charging party. *Hicks*, 572 F.2d at 964-65 (emphasis added). Plaintiff argues that he properly informed the PHRC of his desire to amend and followed appropriate administrative procedure, including responding to the PHRC's Intake Question Summary. Thus, any deficiency in his amendment was a result of the commission's failure to follow its procedures.

Plaintiff's reliance on *Hicks* is misplaced. In *Hicks*, the charging party filed a broad complaint for "disparate treatment" with the EEOC that the Third Circuit concluded could have encompassed race as well as sex discrimination. *See Id.* at 967. Therefore, Hicks' EEOC complaint was sufficiently broad that it could encompass both forms of discrimination alleviating his duty to first bring his sex discrimination charge before the EEOC. *See Id.* In this case, plaintiff did not file such a broad charge. James' complaint before the PHRC and EEOC alleged race discrimination, and only later did he seek to amend to include disability discrimination. (*See* doc. 27, pgs. 18-19.) Thus, we conclude that *Hicks* does not apply to the facts of this case. Instead, our inquiry is whether plaintiff's amendment to his charge was required to be filed under oath or affirmation.

Prior to bringing an ADA claim in the district court, a plaintiff must comply with the procedural requirements set forth in Title VII of the Civil Rights Act of 1964, which mandates that a plaintiff must first file a charge, "in writing under oath or affirmation," with the EEOC/PHRC. 42 U.S.C. § 2000e-5(b); *see also Buck v. Hampton*

*Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006). In addition, EEOC regulations require a charge to "be in writing and signed and verified," 29 C.F.R. § 1601.9, and define "verified" as "sworn to or affirmed before a notary public, designated representative of the Commission, or other person duly authorized by law to administer oaths and take acknowledgements, or supported by an unsworn declaration in writing under penalty of perjury." 29 C.F.R. § 1601.3(a); *see also Buck*, 452 F.3d at 260. This verification requirement is mandatory and a prerequisite to filing suit in the district court. *Buck*, 452 F.3d at 261. However, this requirement can be waived by a defendant. If an employer has actual notice of the charge and chooses to respond to it on the merits without asserting a defense of lack of verification, the defense is waived and the employer cannot secure a dismissal in federal court based on said defense. *Id.* at 265. In addition, "only in the most unusual cases," equitable considerations may excuse a plaintiff's failure to verify. *Id.*

Upon review, we conclude that plaintiff failed to verify his amendment before the PHRC, and thus his ADA claim should be dismissed. The record before the court shows that James initially filed a racial discrimination charge with the EEOC and the PHRC, and then sought to amend the charge to include an ADA claim on September 2, 2006. (Doc. 1, ex. B.) On December 22, 2006, plaintiff submitted his answers to the Intake Question Summary as required by the PHRC. (Doc. 28, ex. E.) The record also reveals that plaintiff's original EEOC and PHRC charges included a signed verification made under penalty of perjury. (Doc. 28, ex. A.) However, the evidence also shows that plaintiff failed to submit his amended charge under oath or affirmation. Plaintiff asserts, in not so many words and without citing supporting law, that his original verification filed under his original charge satisfies the statutory or administrative requirements. We disagree. The statute and regulations make clear that a charge must be made under

oath or affirmation. Based on the statutory and regulation language, it follows that any later amendment to the charge adding an additional, separate count that was not covered by the narrow language of the original charge must also be in writing made under oath or affirmation. Since James did not verify his amended charge claiming disability discrimination, we conclude that based on the mandatory language of the statute and regulations that his ADA claim must be dismissed. Inasmuch as plaintiff does not argue and we do not find equitable grounds for waiving the verification requirement, we will grant defendant summary judgment on this claim.

*IV. Conclusion*

Based on the preceding memorandum, we will grant defendant's motion for summary judgment on all claims and close the case.

We will issue an appropriate order.

/s/William W. Caldwell
William W. Caldwell
United States District Judge

Date: November 24, 2010

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

STEPHEN COREY JAMES, :
    Plaintiff :
:
vs. : CIVIL NO. 1:CV-09-1081
:
SUTLIFF SATURN, INC. :
    Defendant :

*O R D E R*

AND NOW, this 24th day of November, 2010, upon consideration defendant's motion for summary judgment (doc. 19), filed August 20, 2010, and pursuant to the accompanying Memorandum, it is ordered that:

1. Defendant's motion for summary judgment is granted.

2. Judgment is entered in favor of Defendant Sutliff Saturn, Inc. and against Plaintiff Stephen Corey James.

3. The Clerk of Court shall close this file.

                                                /s/William W. Caldwell
                                                William W. Caldwell
                                                United States District Judge